Good morning, your honors. May it please the court, my name is David Mercer and I represent the appellant Gregory Thomas in this case. This appeal arises from the district court ordering that Mr. Thomas be civilly committed pursuant to 18 U.S.C. 4246. Such a civil commitment is in reality a potential lifelong commitment to the Bureau of Prisons and the day-to-day reality of such a commitment is indistinguishable from a criminal sentence. In short, civil commitments are a serious deprivation of liberty. Given the dire consequences that flow from such a commitment, Congress in drafting 4246 made sure that such commitments would be based only on quote clear and convincing evidence close quote and requiring the government to prove the elements to that level of proof, clear and convincing evidence. Pursuant to the statute, there are two elements that the government has to prove to that level. The first element is is that the defendant suffers from a mental disease or defect and secondly that the defendant is dangerous to society as a direct result of that mental disease or defect. In other words, there has to be some causal link between the mental disease and the danger that arises from that mental disease. This court has previously stated that there must be a direct causal connection between the mental disease and defect and the defendant's dangerousness and there has to be a substantial or the defect has to be a substantial cause of the dangers. When read together, the statutes and cases would require the government to prove those elements to a very high level because what's at stake is substantial liberty. Now in this case, the district court made a finding that Mr. Thomas suffers from a mental illness and that as a result of that mental illness he's dangerous. The standard of review in this case quite frankly gives me an uphill battle. The standard of review in this case is that I have to show this finding. I do want to pause and just indicate though that I think perhaps when you combine the statutory requirement of clear and convincing evidence with the standard of review, one thing the court could do to really adequately phrase the issue before it is whether the district court clearly erred in finding clear and convincing evidence. I think that's the most to the evidence in this case and to the two elements that are required for a civil commitment. As to the first element, whether Mr. Thomas suffers from a mental disease or defect, I don't think there's any question that he does. There was before the district court unanimous expert opinion that he does in fact suffer from such a disease or defect and specifically the finding of all experts was that Mr. Thomas suffers from an unspecified neurocognitive disorder and intellectual function. So in terms of the district court's finding as to that first element, there is no dispute that that is a proper finding by the district court. The conflict however comes in with the findings as to the second element which is whether there is direct and substantial evidence that Mr. Thomas's mental disease or defect causes him to be dangerous. In looking at the evidence in this case, there's many ways to view it. There's substantial documentary evidence both at the risk assessment report that was authored by all the government's experts is before the court. Dr. Richard DeMere also as an independent expert filed a written report with his findings. And then there's also about a hundred and sixty page transcript of the evidence that was for this court to rely on. It's a lot to summarize in terms of a sufficiency of the evidence argument. I suppose from my viewpoint the best way of viewing the evidence before the district court is to break it down into discrete time periods. Before the district court was a time period before Mr. Thomas was indicted in federal court. His indictment in federal court occurred in January of 2013 and so one of the periods that was examined not only by all the experts but also by the district court was his behavior, his actions, his circumstances prior to January of 2013. In this time period, the experts wrestled with some of the issues that I believe never rose to the level of clear and convincing evidence that Mr. Thomas is violent as a result of mental illness. One of the facts that all the experts looked at was a 1980 conviction that Mr. Thomas suffered for sexual assault. The government's experts relied on that by assuming that that was violent in nature. However, under cross-examination the government's experts conceded that there really is no evidence as to the specific factual nature of that prior conviction. Nor is there any evidence that that prior was his mental disease or defect. So the district court was left with an assumption about the nature of a conviction that occurred about 33 years prior to the indictment and yet the government's experts found that to be highly significant in their finding that he has a history of violence which of course is an important factor in deciding whether he has a future risk of a 2002 theft charge that did not result in a conviction and again under cross-examination there was no indication that that theft had any violent component to it nor was it linked to his mental disease or defect. There were three things that the experts in the district court relied on in finding that during this pre-indictment phase that Mr. Thomas had some indicia of violence. One is is that he had a history of fighting when he was around nine years of age in elementary school. He grew up in a really tough disadvantaged environment and not too surprisingly at nine years of age he engaged in fist fights. Mr. Thomas then went on to have a 20-year professional career as a boxer. Risk assessment team also found that to be significant. In fact they phrased part of their findings as Mr. Thomas would get his desired goals whether it be winning a boxing match or some other goal by violence and so they considered his professional boxing career to be indicative of a potential for future violence. The main factor however though was the instant offense the charged conduct in the indictment. In relying on this and I believe the risk assessment team relied on this heavily they did not take into account that Mr. Thomas's presumed to be innocent that he has a right to remain silent on those allegations and in fact it's very interesting in their findings they found him not to be the facilitator of the instant offense but rather to be passively caused to engage in criminal conduct by his long-standing paramour of 20 years. Counsel let's discuss that a little bit as I understand it there was a finding that he was easily manipulated. That's correct. Is there anything in the violence? Well in answer to the court's question Dr. DeMere found that he had a potential for being manipulated and that in this specific instance of the allegations of the indictment that his paramour manipulated him for her criminal ends. The significant part about Dr. DeMere's finding was that he found that this susceptibility to manipulation was very context specific and specifically within the context of that 20-year romantic relationship that would be difficult to replicate in the future and so his susceptibility to manipulation was very much confined to this relationship with this woman and Dr. DeMere did not find that that extended into the future because there's no assurance that such a similar relationship would occur in the future. Now I don't want you to run out of time without addressing this particular question. As I understand it a significant question in the case has to do with the court giving more weight to the government mental health experts opinions as opposed to Dr. DeMere, right? And in that regard the thing that sticks out to me a fact that is very conspicuous here in trying to to weigh the two opinions is that as I understand it Dr. DeMere stated that in fact repeatedly stated that he had not reviewed Mr. Thomas's underlying offense conduct and stated that that that information could change his opinion. Isn't that kind of a really heavy increase you said the beginning you have an uphill battle doesn't that increase the slope a little bit that statement? I would disagree with the court on this regard. When Dr. DeMere drafted his written report it is in fact true that he did not have those records however those were supplied to Dr. DeMere prior to his testimony and so the court had before it his oral testimony after he had been given the chance to review those records and his testimony at the evidentiary hearing was still that Mr. Thomas was not committable even after reviewing those records. And so I know the government made a big deal out of that in their brief but I think that potential problem was solved by him reviewing those records prior to his testimony. As to the timing issue and I think this is really the core issue of this appeal both the district court and the magistrates report and recommendation made a direct statement that they discredited Dr. DeMere's testimony and credited the government's experts testimony because the government's experts had substantially more time to be with Mr. Thomas and to be with him. I believe that that is an inappropriate and really an unassailable position from the defendant's standpoint. The only option I could ever have to combat that reasoning is to ask the court to appoint my expert to reside at the Bureau of Prisons for six months or more and be with Mr. Thomas at a level that's commiserate with the government's experts and even that wouldn't be have to do that would also be credited to the time that the government's experts had to observe Mr. Thomas. There is absolutely no way going forward from this case that I could ever hire and use and put before the district court an expert that will be viewed on par with the government's experts if that is the standard. So I'd like to save a little bit of time for rebuttal but I think that's the core issue of this case. Thank you. Good morning. May it please the court. My name is Cindy Hyde. I'm an Assistant United States Attorney from Springfield. I represent the United States in this case. I agree with Mr. Mercer that there are two time frames that are important here and I think that it's important for us to start with the charges that were Mr. Thomas was charged with. He himself was charged with 21 violent offenses which included kidnapping, forced labor, hate crime, assault with a deadly weapon, and involuntary servitude of another human being. Mr. Thomas and his common-law wife as well as other co-conspirators were involved in a crime where they kidnapped mentally disabled people and they collected their disability payments. Mr. Thomas was an enforcer. He controlled the physical beings that were being kidnapped. He put the locks on the doors, he nailed the windows shut, and in fact physically beat the people that were not complying with the wishes of primarily his common-law wife. Mr. Thomas was set to plead guilty in this case as the other defendants did and they received lengthy sentences. But at the hearing for the became concerned that Mr. Thomas wasn't able to effectively communicate with the court or with his attorney. So she ordered that he be sent to Springfield for a mental evaluation. That was the initial time that Mr. Thomas spent in Springfield and in that mental evaluation they found that he was incompetent to stand trial and was not restorable to competency. After that finding was made, the district court in Pennsylvania then referred him back to 4246 mental evaluation. That's the second time period that's important in this case. The Medical Center, as you're well aware, has experts that work with these individuals to test them and the records replete with the tests that were done, all the documentation that was reviewed by the experts, and the risk assessment panel decided that Mr. Thomas was a danger to himself and to the 4246. After that happened, Mr. Mercer asked for an independent mental exam and Dr. DeMere found that Mr. Thomas did not meet the 4246 criteria and that there was not substantial evidence to support the charged offenses. So Mr. Mercer and I agree that all the experts in this case understood that Mr. Thomas did have a mental disease or defect and that's the unspecified neurocognitive disorder that Mr. Mercer mentioned. This case turns on the fact that the experts disagreed as to the impact on the future behavior of Mr. Thomas. As you know, Judge Rush held an evidentiary hearing in this case. The evidence again is fully set out really by both briefs. Drs. Chavez and Brandt testified on behalf of the United States and argued that in fact Mr. Thomas was a danger and should be 4246. Dr. DeMere, as the court has noted, did not have all of the information, the written information about the crimes when he evaluated Mr. Thomas. It's clear from his report that he knew that what he was charged with because he named it on the front page of his report. What he did not have prior to issuing his own report was some of the underlying documentation which included a really lengthy description of the crimes by Linda West, common-law wife, and it's a horrific account of what happened with these individuals and that is the missing piece of the puzzle that Dr. DeMere admitted he didn't have. Now as Mr. Mercer has mentioned, it turns on the assessment that Mr. Thomas was that he could be easily manipulated but where the experts disagreed was the United States experts believed that he's so susceptible to manipulation that if we were to release him he could find himself right back in another similar situation where a person who was stronger, was more strong-willed, could easily manipulate him because he does in fact suffer from that neurocognitive disorder. The court also found that the lack of insight that Mr. Thomas had in crimes is really important which makes him also susceptible to the manipulation and the fact that he used violence to solve problems. Contrary to what Mr. Mercer has said, there's actually more evidence of that than the alleged rape and that type of thing. He pled guilty to the rape and whether that was violent rape or not violent rape, the panel of experts for the United States was very concerned that he wouldn't acknowledge that he had done it when he in fact pled guilty to it and his history of violence continued up through the time that he was in being evaluated for the 4246 because he was using violence to enforce whatever Linda Weston wanted the kidnapped individuals to do. Counselor, given all of those facts, I'm curious why the relied at all on the fact that Mr. Thomas had a past history as a boxer and on page 8 of government's brief it says Thomas has shown a lifelong pattern of violent behavior wherein he views violence as an acceptable method to achieve a goal, whether to win a boxing match or obtain compliance. It seems that the government is saying that a history of involvement in contact sports is a factor to be considered in a lifelong civil commitment. Is that the government's position? No your honor and I believe that what there's some what we are summarizing on page 8 was the diagnostic testing that the government experts did and it's just one piece of the puzzle. I believe on page 6 we enumerate that as the historical clinical risk scheme 20 version 3 which is found at the joint appendix 15 to 16 and so I think that that is an summary of what the risk assessment panel evaluated when they were looking. Certainly the fact that he was a professional boxer would not lend itself in and of itself to a violent tendency but the fact that he did use violence later on in life with regard to the individuals that he had kidnapped or assisted in kidnapping and keeping them in the home. But that's not how it was I understand your honor I believe that that was and I don't remember what the actual report said but I think this is a summary of the report. Certainly as this court is aware with a 4246 every year the risk assessment panel will once again evaluate Mr. Thomas and his competency and whether or not he remains a risk to the community and so violence is just one factor that we consider. I did want to mention just briefly the issue that Mr. Mercer mentioned with regard to the time that the risk assessment panel was afforded versus that of Dr. DeMere. Certainly Mr. Mercer's points are well taken that obviously the government's going to have more of an opportunity to spend time with the inmates whether or not their 4246 civil commitments are in the actual committed inmates but I do think that the brief and the argument overstates the emphasis that was placed on that by the court because when Judge Rush wrote his report and recommendation he didn't know that the government experts had spent significantly more time evaluating Mr. Thomas but then he went on to say second and more importantly and then went on to evaluate Dr. DeMere's opinions and so I mean the Dr. DeMere's opinions certainly at no time did he say this man needs to be out roaming free. Dr. DeMere himself did not say that. Dr. DeMere was also convinced that this man suffered from a neurocognitive disorder. He just felt like he had a better chance of not being manipulated and the district court disagreed with that position. I don't think that the clearly erroneous standard has been met in this case and for that reason we ask that the judgment of the district court be affirmed. Thank you very much counsel. Very briefly your honor I just want to respond to a couple of things that the government argued. I think it's misguided to continue to try to lock Dr. DeMere into his statements in his written report about not having access to the criminal records. If the court was to look at page 200 to 205 of the government asked Dr. DeMere have you have had a chance to look at these records and discovery that support the criminal charges and he said yes and they asked him did it does it change your opinion he said no. So he got a full and fair opportunity to look at the discovery in the underlying criminal case and he stuck by his findings and his opinions and conclusions in his report. The second thing that I want to bring to the court's attention is that I think clearly his experience and profession as being a boxer for 20 years was considered to be a factor at least by the government's experts. They very clearly in the risk assessment report indicate that his use of boxing to achieve goals was an indicator that he had a propensity for violence. And then last I come back to the issue of time given to the experts to evaluate Mr. Thomas. I don't think that this court can or I don't think the district court could deny that it put a lot of emphasis on that time disparity. In fact the express finding of the district court and the magistrate judge was that it would accord more weight and that's a direct quote from the opinion of the district court in the report and recommendation. It would accord more weight to the government's experts because of the time that they were given to observe Mr. Thomas. Unless there are other questions by the court I will yield the rest of my time. All right, thank you very much. Thank you. Thank you counsel for your arguments. The case is submitted. You may stand aside.